United States District Court
Middle District of Florida
Jacksonville Division

**In Admiralty**

IN RE: DEFINITIVE MARINE SURVEYS INC.
AND MARK HOLZ,

*Plaintiffs.*                                                            NO. 3:17-CV-887-J-32PDB

---

## Report and Recommendation

A boy lost his finger in a boating accident. Through this action under 28 U.S.C. § 1333 and the Limitation Act, 46 U.S.C. §§ 30501–12, the boat owners—Definitive Marine Surveys, Inc., and Mark Holz—seek to limit their liability to not exceed the value of the boat.[1] The boy's parents, Linda and Son Tran, have appeared to contest limitation of liability. They contend the boat owners failed to timely file the complaint, timeliness is jurisdictional, and dismissal therefore is warranted under Federal Rule of Civil Procedure 12(b)(1). The owners contend they timely filed the complaint; timeliness is not jurisdictional; this Court therefore may consider nothing outside the pleadings to decide timeliness; if untimely, the Court should equitably toll the deadline based on unresponsiveness by the Trans' counsel; and the owners should be allowed to conduct discovery before a dispositive ruling.

The parties' contentions were expressed at oral argument on the motion to dismiss, Doc. 31, and are contained in these filings: (1) the Trans' motion to dismiss and eight exhibits, Docs. 11, 11-1–11-8; (2) the Trans' notice of supplemental authority, Doc. 30; (3) the boat owners' memorandum in opposition to the motion to

---

[1]The complaint describes Definitive Marine and Holz as "owner *pro hac vice*" of the boat, Definitive Marine as the owner of the boat, and Holz as the sole shareholder and officer of Definitive Marine. Doc. 1 ¶¶ 4, 5 and at p.1. This report and recommendation refers to the plaintiffs collectively as the "boat owners."

dismiss and one exhibit, Docs. 17, 17-1; (4) the boat owners' supplemental brief and four exhibits, Docs. 32, 32-1–32-4; (5) the Trans' supplemental brief and fifteen exhibits, Docs. 33, 33-1; (6) the boat owners' response to the Trans' supplemental brief, Doc. 35; and (7) the Trans' response to the boat owners' supplemental brief, Doc. 36.[2]

The motion to dismiss was referred to the undersigned under 28 U.S.C. § 636(b) and Local Rule 6.01(b) for a report and recommendation on a resolution. Doc. 19.

## I.    Background

The boat is a 20-foot pontoon boat. Doc. 1 ¶ 8. The Trans allege that, on July 2, 2016, Mrs. Tran rented the boat from Definitive Marine (doing business as Welaka Charters), and the family boated to Salt Springs. Doc. 1 ¶¶ 9, 10. They allege that, as the boy jumped into the water, one of his fingers became lodged in a gate on the boat and was partially amputated. Doc. 1 ¶ 10.

The Trans sued the boat owners in state court on June 8, 2017, alleging strict liability and negligence. *Son Tran & Lisa Tran, individually and as parents and natural guardians of A.T., a minor child*, 2017-215-CA-53 (Circuit Court of the Seventh Judicial Circuit, in and for Putnam County, Florida). Doc. 32-1.

The boat owners filed this action on August 2, 2017. Doc. 1. With the complaint, they filed an affidavit of a marine surveyor who opined the boat was worth $5,000 on July 3, 2016, and $6,500 on July 27, 2017 (following improvements). Doc. 1-1.

Under Supplemental Rule F of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and Local Admiralty Rule 7.06, this

---

[2]The undersigned directed the parties to file the supplemental memoranda during oral argument when it became clear additional briefing on whether the deadline is jurisdictional would be helpful. Doc. 31.

Court enjoined the state action and ordered the boat owners to notify anyone claiming damages related to the accident to file claims with this Court by October 2, 2017. Docs. 3, 4. An insurance company timely filed a claim for $105,110.32 for the boy's treatment. Doc. 8. The Trans timely filed the current motion to dismiss and exhibits and an answer and counterclaims for strict liability and negligence. Docs. 11, 12, 13. The Court entered a case management and scheduling order, Doc. 22, but, upon request of the boat owners and the Trans, vacated the order and stayed discovery pending a decision on the motion to dismiss, Docs. 27, 28. The Court informed the parties that, if the motion to dismiss is denied, the Court would direct them to file an amended case management report.[3] Doc. 28.

The boat owners and the Trans reached an impasse at a mediation on January 19, 2018. Doc. 26.

## II.   Arguments

The Trans' motion to dismiss is based on 46 U.S.C. § 30511(a), which provides, "The owner of a vessel may bring a civil action in a district court of the United States for limitation of liability. … The action must be brought within 6 months after a claimant gives the owner written notice of a claim." *Accord* Supp. Rule F(1) ("Not later than six months after receipt of a claim in writing, any vessel owner may file a complaint in the district court … for limitation of liability[.]").

The Trans contend the boat owners received written notice of their claims through letters from their counsel on July 14, 2016, and July 26, 2016, making their August 2, 2017, complaint in this action untimely. Doc. 11 at 5–11. The Trans provide eight exhibits: (1) the July 14, 2016, letter, Doc. 11-1; (2) a certified receipt for that

---

[3]The Trans sued the sellers and manufacturers of the boat and allegedly defective boat part in a second state court action on December 19, 2017, alleging strict liability and negligent failure to warn. *Son Tran & Lisa Tran, individually and as parents and natural guardians of A.T., a minor child*, 2017-451-CA (Circuit Court of the Seventh Judicial Circuit, in and for Putnam County, Florida). That action is ongoing and does not affect this action.

letter, Doc. 11-2; (3) a July 22, 2016, letter from Definitive Marine's insurance carrier, Doc. 11-3; (4) a July 25, 2016, letter from the insurance carrier's adjuster, Doc. 11-4; (5) the July 26, 2016, letter, Doc. 11-5; (6) a certified receipt and UPS tracking information for that letter, Doc. 11-6; (7) an August 2, 2016, letter from the insurance carrier, Doc. 11-7; and (8) an affidavit from Daron Murrell concerning asserted incriminating statements a manager of Welaka Charters made the day after the accident, Doc. 11-8.[4] The Trans contend that the deadline in § 30511(a) and Supplemental Rule F(1) is jurisdictional and, therefore, the Court may consider the exhibits to decide the motion. Doc. 11 at 5.

In the memorandum in opposition to the motion to dismiss, the boat owners did not contest that the deadline in § 30511(a) is jurisdictional. *See generally* Doc. 17. Rather, they contended they timely filed the complaint because the first sufficient written notice of the claims was a February 3, 2017, letter from the Trans' counsel to the boat owners' counsel and the insurance adjustor. Doc. 17 at 3–12. They provide that letter as their only exhibit. Doc. 17-1. They argue the Court should not consider Murrell's affidavit because he omits that it is based on personal knowledge and discusses only an asserted conversation, which is not written notice. Doc. 17 at 8 n.1.

At oral argument to discuss whether the deadline in § 30511(a) is jurisdictional, the boat owners for the first time contended it is not.[5] Asked if there was any objection to converting the motion to dismiss to a motion for summary judgment to allow the Court to consider evidence outside the pleadings in the event

---

[4]In the affidavit, Murrell states that he and his son returned the boat on July 3, 2016, at approximately 10:30 a.m.; the manager of Welaka Charters "expressed remorse for what [had] happened to our friend"; upon going to the boat for "check-out," the manager told him and his son that he had known about the gate "causing a pinch-point for fingers" and that others had been injured "the exact same way"; showed them "the small round ball guard where [the boy's] finger had been ripped off"; and told Murrell that "the manufacturer tried to fix the problem with the ball guards" but that had not worked. Doc. 11-8.

[5]The oral argument has not been transcribed. Anyone who would like a transcription may contact Courtroom Deputy Angela Loeschen, (904) 549-1950, for ordering and pricing information.

§ 30511(a) is not jurisdictional, both sides objected. The Trans objected because they did not want the Court to view the evidence and inferences in the light most favorable to the boat owners under the standard for summary judgment in Federal Rule of Civil Procedure 56. The boat owners objected because they wanted discovery before any summary-judgment ruling, including to depose Murrell and ask him about his statements in the affidavit.

In the Trans' supplemental brief, they reassert that § 30511(a) is jurisdictional, Doc. 33 at 4–8, reassert that the complaint is untimely, Doc. 33 at 8–20, and provide four exhibits not previously in the record: (1) an August 2, 2016, letter from the Trans' counsel to the insurance adjuster, Doc. 33-1 at 11; (2) a second August 2, 2016, letter from the Trans' counsel to the insurance adjuster, Doc. 33-1 at 12–13; (3) an August 25, 2016, letter from the Trans' counsel to the insurance adjuster, Doc. 33-1 at 14; and (4) an October 18, 2016, letter and email from the boat owners' counsel to the Trans' counsel, Doc. 33-1 at 15–16. To distinguish an adverse case, they also provide documents from that case. Doc. 33-1 at 20–29.

In the boat owners' supplemental memorandum, they contend § 30511(a) is not jurisdictional, Doc. 33 at 5–8, reassert that the complaint is timely, Doc. 33 at 8–11, for the first time contend that if the earlier correspondence provided sufficient written notice of the claims, the Court should equitably toll the deadline based on lack of responsiveness by the Trans' counsel, Doc. 33 at 12–14, and provide two exhibits not previously in the record: (1) the complaint against them filed in the state action, Doc. 32-1; and (2) their notice of stay filed in that state action, Doc. 32-2.

### III.   Law

### A.   *Rule 12(b) Standards*

#### 1.   *Rule 12(b)(1)*

"[I]t is extremely difficult to dismiss a claim for lack of subject matter jurisdiction." *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260 (11th Cir. 1997).

Attacks on subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) are "facial attacks" or "factual attacks." *Id.* A facial attack requires a court to merely look to see if the plaintiff has sufficiently alleged a basis for jurisdiction, and the allegations in his complaint are taken as true for the motion. *Id.* at 1261. A factual attack challenges the existence of jurisdiction and allows a court to consider matters outside the pleadings. *Id.*

In a factual attack, a court's "power to make findings of facts and to weigh the evidence depends on whether the factual attack on jurisdiction also implicates the merits of plaintiff's cause of action." *Id.* If the facts to sustain jurisdiction do not implicate the merits of the cause of action, the court "may proceed as it never could" under Rules 12(b)(6) or 56. *Id.* Because the issue is the court's "very power to hear the case," the court may weigh the evidence without presuming the truth of the plaintiff's allegations. *Id.*

#### 2.   *Rule 12(b)(6)*

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." To decide a motion under the rule, a court may consider only the complaint allegations, anything attached to the complaint, anything extrinsic to the complaint that is central to the claim and without challenge to its authenticity (like the contract in a breach-of-contract claim), and any judicially noticeable facts. *U.S. ex rel. Osheroff v. Humana*

6

*Inc.*, 776 F.3d 805, 811 (11th Cir. 2015). A court must accept as true factual allegations and construe them in the light most favorable to the non-moving party. *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). And a court must draw all reasonable inferences in the non-moving party's favor. *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003).

## B.    *Jurisdictional Limitation v. Mandatory Claim-Processing Rule*

Only Congress may determine a lower federal court's jurisdiction. *Hamer v. Neighborhood Housing Servs. of Chicago*, 138 S. Ct. 13, 17 (2017). A jurisdictional limitation requires compliance; without compliance, the court has no "adjudicatory authority" over the action and must dismiss it—a "drastic result." *Id.* Failure to comply is not subject to waiver or forfeiture and may be raised in the first instance by any court at any time. *Id.* "Tardy jurisdictional objections can therefore result in a waste of adjudicatory recourses and can disturbingly disarm litigants." *Sebelius v. Auburn Reg. Med. Ctr.*, 568 U.S. 145, 153 (2013).

A mandatory claim-processing rule is "less stern." *Hamer,* 138 S. Ct. at 17. It seeks "to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson v. Shinseki,* 562 U.S. 428, 435 (2011). If properly invoked, a mandatory claim-processing rule "must be enforced" but "may be waived or forfeited." *Hamer*, 138 S. Ct. at 17. The Supreme Court has "reserved whether mandatory claim-processing rules may be subject to equitable exceptions." *Id.* at 18 n.3; *see also Kontrick v. Ryan*, 540 U.S. 443, 457 (2004) ("Whether the Rules, despite their strict limitations, could be softened on equitable grounds is … a question we do not reach.") (internal footnote omitted).

The Supreme Court has lamented that it has at times mischaracterized mandatory claim-processing rules as elements of a cause of action or jurisdictional limitations. *See, e.g., Hamer*, 138 S. Ct. at 17. With the "untoward consequences" of mischaracterizing a rule as jurisdictional in mind, *Sebelius*, 568 U.S. at 153, and a "marked desire" to curtail "drive-by jurisdictional rulings" that "too easily can miss

the critical differences between true jurisdictional conditions and nonjurisdictional limitations," *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010) (internal quotation marks omitted), the Court has "tried in recent cases to bring some discipline to the use" of the term, "jurisdiction," *Henderson*, 562 U.S. at 435, by undertaking to clarify the distinction between a jurisdictional limitation and a mandatory claim-processing rule, *Bowles v. Russell*, 551 U.S. 205, 210 (2007).

Indeed, in the past two decades, the Court has emphasized or touched on the distinction in no less than nineteen cases. *See Patchak v. Zinke*, 138 S. Ct. 897, 905 (2018); *Hamer*, 138 S. Ct. at 17; *Manrique v. United States*, 137 S. Ct. 1266, 1271–72 (2017); *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1631–32 (2015); *Sebelius*, 568 U.S. at 153–55; *Gonzalez v. Thaler*, 565 U.S. 134, 141–43 (2012); *Henderson*, 562 U.S. at 434–36; *Dolan v. United States*, 560 U.S. 605, 610–11 (2010); *Reed Elsevier*, 559 U.S. at 161–63; *Union Pac. R. Co. v. Brotherhood of Locomotive Engs. & Trainmen*, 558 U.S. 67, 81–82 (2009); *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133–34 (2008); *Bowles*, 551 U.S. at 209–12; *Day v. McDonough*, 547 U.S. 198, 205–06 (2006); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511–12 (2006); *Eberhart v. United States*, 546 U.S. 12, 16–17 (2005); *Scarborough v. Principi*, 541 U.S. 401, 413–14, (2004); *Kontrick*, 540 U.S. at 454–56; *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 171–72 (2003); *Steel Co. v. Citizens for Better Environ.*, 523 U.S. 83, 90 (1998).[6]

Through those cases, the Court has emphasized several principles. Given the "harsh consequences" of failing to comply with a jurisdictional limitation, a litigant

---

[6]In a few of these cases, the Court discusses an unnamed third category in addition to jurisdictional limitations and mandatory claim-processing rules: statutory deadlines to encourage speedy processing that do not prevent a judge or other public official from taking action after missing the deadline. *See Dolan,* 560 U.S. at 607–608 (missed 90-day deadline for determining victim losses); *Barnhart,* 537 U.S. at 171–72 (missed deadline for assigning industry retiree benefits); *see also United States v. Montalvo–Murillo,* 495 U.S. 711, 722 (1990) (missed deadline for holding bail detention hearing); *Brock v. Pierce County,* 476 U.S. 253, 266 (1986) (missed deadline for determining misuse of federal grant funds).

"must clear a high bar to establish that a statute of limitations is jurisdictional," *Kwai Fun Wong*, 135 S. Ct. at 1632, and a court "should not lightly attach those drastic consequences to limits Congress has enacted," *Gonzalez*, 565 U.S. at 141. "Filing deadlines" are "quintessential claim-processing rules," *Henderson*, 562 U.S. at 435, "even when the time limit is important" and "framed in mandatory terms," no matter how emphatic (e.g., "shall be forever barred"), *Kwai Fun Wong*, 135 S. Ct. at 1632. To be a jurisdictional limitation, Congress need not use "magic words," *Henderson*, 562 U.S. at 436, but traditional tools of statutory construction "must plainly show that Congress imbued a procedural bar with jurisdictional consequences," *Kwai Fun Wong*, 135 S. Ct. at 1632. Coined the "clear-statement principle," *Gonzalez*, 565 U.S. at 142, "Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional[,]" *Kwai Fun Wong*, 135 S. Ct. at 1632. "[J]urisdictional statutes speak about jurisdiction, or more generally phrased, about a court's powers." *Id.* at 1633 n.4. A condition should not be "ranked as jurisdictional merely because it promotes important congressional objectives." *Reed Elsevier*, 559 U.S. at 169 n. 9. Absent Congress's "own plain statement" that a deadline is jurisdictional, the Court will treat the deadline as a mandatory claim-processing rule.[7] *Kwai Fun Wong*, 135 S. Ct. at 1638.

*Patchak* and *Kwai Fun Wong* present recent applications of those principles with contrasting outcomes.

In *Patchak*, the Supreme Court determined the following law is jurisdictional: "'No Claims.—Notwithstanding any other provision of law, an action (including an action pending in a Federal court as of the date of enactment of this Act) relating to the [land] shall not be filed or maintained in a Federal court and shall be promptly

---

[7]There is an exception to the principle that, absent a clear-statement by Congress, the Supreme Court will treat a deadline as a mandatory claim-processing rule: if Congress has left undisturbed "a long line" of the Supreme Court's decisions on the jurisdictional character of a time limitation (such as the deadline for filing a notice of appeal in 28 U.S.C. § 2107), the Court may reaffirm its jurisdictional character. *See Union Pac. R. Co.*, 558 U.S. at 82.

dismissed.'" 138 S. Ct. at 904 (quoting 128 Stat. 1913 § 2(b)). The Court explained the law "uses jurisdictional language" ("action" and "shall not be filed or maintained in a Federal court"); the law imposes jurisdictional consequences ("shall be promptly dismissed"); the law adds the phrase, "notwithstanding any other provision of law," which includes the general grant of federal question jurisdiction under 28 U.S.C. § 1331; and the law uses language similar to other statutes the Court has deemed jurisdictional (for example, "an appeal may not be taken," "no person shall file or prosecute," and "no action … shall be brought under 28 U.S.C. § 1331"). Id. at 905. The Court added that the law "cannot plausibly be read as anything else," observing the law identifies no element for relief, "[n]or is it a claim-processing rule, like a filing deadline or an exhaustion requirement, that requires the parties to take certain procedural steps at certain specified times."[8] Id. at 906 (internal quotation marks omitted).

In contrast, in *Kwai Fun Wong*, the Court determined the following section of the Federal Tort Claims Act is nonjurisdictional: a tort claim against the United States "'shall be forever barred'" unless it is presented to the "'appropriate Federal agency within two years after such claim accrues'" and then brought to federal court "'within six months' after the agency acts on the claim." 135 S. Ct. at 1629, 1632 (quoting 28 U.S.C. § 2401(b)).[9] The Court explained Congress "provided no clear

---

[8]For another case in which the Court determined a statutory rule is a jurisdictional limitation, see *Gonzalez*, 565 U.S. at 143 (commenting that 28 U.S.C. § 2253(c)(1) is the only jurisdictional section of § 2253: "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or (B) the final order in a proceeding under section 2255.").

[9]For other cases in which the Court determined a statutory or other rule is nonjurisdictional, see *Hamer*, 138 S. Ct. at 22 (interpreting Federal Rule of Appellate Procedure 4(a)(5)(C): "No extension [of time for filing a notice of appeal] may exceed 30 days after the prescribed time [for filing a notice of appeal] or 14 days after the date [of] the order granting the [extension] motion ..., whichever is later."), *Sebelius*, 568 U.S. at 153–55 (interpreting 42 U.S.C. § 1395*oo*(a): "[A service provider] may obtain a hearing" regarding its reimbursement amount if "such provider files a request for a hearing within 180 days after notice of the intermediary's final determination."), *Gonzalez,* 565 U.S. at

statement" indicating the law is the "rare statute of limitations that can deprive a court of jurisdiction." *Id*. The Court commented the text "speaks only to a claim's timeliness, not to a court's power," and uses "mundane statute-of-limitations language, saying only what every time bar, by definition must: that after a certain time a claim is barred." *Id*. The Court opined neither use of "shall" nor use of the "emphatic" term "forever" was consequential. *Id*. The Court observed the law "does not define a federal court's jurisdiction over tort claims generally, address its authority to hear untimely suits, or in any way cabin its usual equitable powers." *Id*. at 1633. The Court emphasized that the law "reads like an ordinary, run-of-the-mill statute of limitations, spelling out a litigant's filing obligations without restricting a court's authority." *Id*. (internal quotation marks omitted). The Court added that statutory context confirmed its reading of the law, observing the Court "has often explained that Congress's separation of a filing deadline from a jurisdictional grant indicates that the time bar is not jurisdictional," and the law is in a section of Title 28 different from the section of Title 28 conferring on federal district courts the power to hear Federal Tort Claims Act claims, with no link between them. *Id*. The Court further added that Congress said nothing in the legislation to indicate the time bars

---

143 (interpreting 28 U.S.C. § 2253(c)(3): "The certificate of appealability … shall indicate which specific issue or issues satisfy the showing required[.]"), *Dolan*, 560 U.S. at 611 (interpreting 29 U.S.C. § 1113: "[I]f the victim's losses are not ascertainable by the date that is 10 days prior to sentencing," the court "shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing."), and *Arbaugh*, 546 U.S. at 500 (interpreting 42 U.S.C. § 2000e(b): "employer" subject to liability must have "fifteen or more employees").

For a recent Eleventh Circuit case applying the jurisdictional/nonjurisdictional principles and determining a statute is nonjurisdictional, see *Sec., U.S. Dep't of Labor v. Preston*, 873 F.3d 877, 881 (11th Cir. 2017) (interpreting 29 U.S.C. § 1113: "No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.").

are jurisdictional. *Id.* The Court rejected as foreclosed by precedent the argument that when the Federal Tort Claims Act was enacted, Congress would have thought every limitation applying to a lawsuit against the United States "however framed or worded, cut off a court's jurisdiction over untimely claims." *Id.* at 1636.

## C.     *Admiralty Jurisdiction and The Limitation Act*

Article III, section 2, of the United States Constitution extends judicial power "to all Cases of admiralty and maritime Jurisdiction." Congress implemented this jurisdictional grant in 28 U.S.C. § 1333(1), which provides, "The district courts shall have original jurisdiction, exclusive of the courts of the States, of … [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

Under § 1333(1), federal courts have exclusive jurisdiction over in rem actions, but the saving-to-suitors clause allows in personam actions in state court (or in federal court under diversity or maritime jurisdiction) "governed by federal principles of admiralty and maritime law that control the respective rights and liabilities of the parties." *Diesel "Repower," Inc. v. Islander Invests. Ltd.*, 271 F.3d 1318, 1322 (11th Cir. 2001). The clause "embodies a presumption in favor of jury trials and common law remedies in the forum of the claimant's choice." *Offshore of the Palm Beaches, Inc. v. Lynch*, 741 F.3d 1251, 1258 (11th Cir. 2014) (quoted authority omitted).

"Maritime jurisdiction over torts is based on the location of the incident and a nexus to maritime activity." *Minott v. M/Y BRUNELLO*, 891 F.3d 1277, 1282 (11th Cir. 2018). A district court has jurisdiction if the tort occurred on navigable water and has sufficient connection with maritime activity. *Id.* A tort has sufficient connection with maritime activity if the "potential hazard to maritime commerce arises out of activity that bears a substantial relationship to traditional maritime activity." *Mink v. Genmar Indus., Inc.*, 29 F.3d 1543, 1546 (11th Cir. 1994) (quoted authority omitted). "[P]roducts liability actions involving pleasure craft in navigation fall within the admiralty jurisdiction." *Id.*

"Admiralty and maritime law includes a host of special rights, duties, rules, and procedures." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 446 (2001). Among them is the Shipowner's Limitation of Liability Act of 1851, as amended (the "Limitation Act"), which "allows a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." *Id.*

Congress passed the Limitation Act in 1851 "'to encourage ship-building and to induce capitalists to invest money in this branch of industry.'" *Id.* (quoting *Norwich & N.Y. Transp. Co. v. Wright*, 13 Wall. 104, 121 (1871)). "'The Act also had the purpose of 'putting American shipping upon an equality with that of other maritime nations' that had their own limitation acts.'" *Id.* at 446–47 (quoting *The Main v. Williams*, 152 U.S. 122, 128 (1894)).[10]

The Act "is not a model of clarity." *Id.* at 447. "Having created a right to seek limited liability, Congress did not provide procedures for determining the entitlement." *Id.* Deeming the Act "incapable of execution" without further instructions, the United States Supreme Court designed and promulgated procedures in 1872. *Id.*

The Limitation Act is now codified at 46 U.S.C. §§ 30501–30512, with the general limitation of liability in 46 U.S.C. § 30505 (formerly 46 App. U.S.C. §§ 183, 189, and before that 46 U.S.C. §§ 183, 189)),[11] and the procedures now in § 30511

---

[10]The limitation has deep roots: "Shortly after the close of the middle ages, many European seafaring nations developed a rule of maritime law that limited a shipowner's liability to the value of the vessel and its cargo. The rule … has remained part of U.S. law [since 1851], a vestige of a time gone by." *Esta Later Charters, Inc. v. Ignacio*, 875 F.2d 234, 235 (9th Cir. 1989).

[11]As now written, § 30505 provides,

(a) **In general**. Except as provided in section 30506 of this title, the liability of the owner of a vessel for any claim, debt, or liability described in subsection (b) shall not exceed the value of the vessel and pending freight. If the vessel has more than one owner, the proportionate share of the liability of any one owner shall not exceed that owner's proportionate

(formerly 46 App. U.S.C. § 185, and before that 46 U.S.C. § 185) and Supplemental Rule F.[12]

"Much like its predecessor provisions," Supplemental Rule F sets forth the process for filing a complaint seeking exoneration from, or limitation, of liability. *Lewis*, 531 U.S. at 448. The complaint must state the "facts on the basis of which the right to limit liability is asserted and all facts necessary to enable the court to determine the amount to which the owner's liability shall be limited." Supp. Rule F(2). The complaint also must state: (1) "the voyage if any, on which the demands sought to be limited arose, with the date and place of its termination"; (2) "the amount of all demands including all unsatisfied liens or claims of lien, in contract or in tort or otherwise, arising on that voyage, so far as known to the plaintiff, and what actions and proceedings, if any, are pending thereon"; (3) "whether the vessel was damaged, lost, or abandoned and, if so, when and where"; (4) "the value of the vessel at the close of the voyage or, in case of wreck, the value of her wreckage, strippings, or proceeds, if any, and where and in whose possession they are"; and (5) "the amount of any pending freight recovered or recoverable." *Id.* Once the complaint has been filed, the district court "secures the value of the vessel or owner's interest, marshals claims, and enjoins the prosecution of other actions with respect to the claims." *Lewis*, 531 U.S. at 448. Without a jury, the court "adjudicates the claims." *Id.* "The court determines whether the vessel owner is liable and whether the owner may limit

---

interest in the vessel and pending freight.

(b) **Claims subject to limitation**. Unless otherwise excluded by law, claims, debts, and liabilities subject to limitation under subsection (a) are those arising from any embezzlement, loss, or destruction of any property, goods, or merchandise shipped or put on board the vessel, any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner.

(c) **Wages**. Subsection (a) does not apply to a claim for wages.

46 U.S.C. § 30505.

[12]The Limitation Act applies to pleasure crafts. *Keys Jet Ski, Inc. v. Kays*, 893 F.2d 1225, 1229 (11th Cir. 1990).

liability. The court then determines the validity of the claims, and if liability is limited, distributes the limited fund among the claimants."[13] *Id.*

The Eleventh Circuit has held that admiralty jurisdiction may not be based "solely upon the Limitation Act, in the absence of a significant relationship between its claim and traditional notions of maritime activity." *Lewis Charters, Inc. v. Huckins Yacht Corp.*, 871 F.2d 1046, 1054 (11th Cir. 1989); *accord Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 244 (2d Cir. 2014) ("Although the Limitation of Liability Act provides a federal cause of action for a vessel owner seeking exoneration or limitation, it does not provide an independent foundation for federal admiralty jurisdiction. That is, the fact that a vessel owner may file a petition for limitation does not mean the district court necessarily has jurisdiction to hear it. Instead, the district court will only have admiralty jurisdiction to hear a petition for limitation if it already has admiralty jurisdiction over the underlying claims that the petition seeks to limit.") (quoted authority and internal quotation marks omitted); *see also MLC Fishing, Inc. v. Velez*, 667 F.3d 140, 143 (2d Cir. 2011) (citing numerous cases holding the same thing).

## D.   *The Deadline for Bringing a Limitation Action*

Both the Limitation Act (and Supplemental Rule F(1)) contain the deadline on which the Trans rely. 46 U.S.C. § 30511(a), titled, "Action by owner for limitation," which is part of Chapter 305 ("Exoneration and Limitation of Liability") of Title 46

---

[13]"Federal courts have exclusive admiralty jurisdiction to determine whether the vessel owner is entitled to limited liability." *Beiswenger Enters. Corp. v. Carletta*, 86 F.3d 1032, 1037 (11th Cir. 1996). To address the tension between the saving-to-suitors clause, which favors jury trials and common law remedies in the forum of the claimant's choice, and the Limitation Act's provision allowing vessel owners to bring a limitation action in federal district court, courts have created exceptions under which a claimant may be allowed to proceed in a state action: (1) when there is a single claim and the claimant stipulates that the vessel owner will not be exposed to competing judgments in excess of the limitation fund, *Offshore of the Palm Beaches, Inc. v. Lynch*, 741 F.3d 1251, 1258 (11th Cir. 2014), and (2) when the limitation fund exceeds the total amount of all possible claims against the vessel owner, *Beiswenger*, 86 F.3d at 1037.

("Shipping"), provides, "The owner of a vessel may bring a civil action in a district court of the United States for limitation of liability under this chapter. The action must be brought within 6 months after a claimant gives the owner written notice of a claim." The other subsections of § 30511 address the amount or security that the owner must provide when it brings a limitation action, § 30511(b)(1); the need for a trustee for the benefit of claimants, § 30511(b)(2); and the cessation of other actions against the owners relating to the matter, § 30511(c).

Congress added the deadline in 1936 during a period when it "subjected the whole limitation scheme to scrutiny" because of "its application to personal injury and death claims from the sinking of the *Morro Castle*."[14] *Maryland Cas. Co. v. Cushing*, 347 U.S. 409, 414 (1954); *see* Limitation of Liability Act, 49 Stat. 1479 (June 5, 1936). The original version provided, "The vessel owner, within six months after a claimant shall have given to or filed with such owner written notice of claim, may petition a district court of the United States of competent jurisdiction for limitation of liability within the provisions of this chapter. … Upon compliance with the requirements of this section all claims and proceedings against the owner with respect to the matter in question shall cease." 46 U.S.C. § 185 (1936). "The six months limitation was inserted only in what may be called the procedural section, Sec. 185." *The Chickie*, 141 F.2d 80, 85 (3d Cir. 1944). The language stayed the same until 2006, when Congress reorganized and restated shipping laws with an express intent to "conform to the understood policy, intent, and purpose of the Congress in the original enactments." PL 109–304, 120 Stat. 1485 § 2(a) (Oct. 6, 2006).

"Before the amendment the rule was firmly established that a shipowner might litigate with adverse claimants the question of his liability, and even after final judgment had gone against him might still file his petition for limitation." *Diamond*

---

[14]In September 1934, the *Morro Castle*, an "elegantly appointed" ship, en route from Havana to New York City, caught fire and burned, killing 137 passengers and crew members. Jeffrey A. Weiss, *Maritime Disasters Through the Ages*, 32 J. OF MAR. L. & COM., 215, 222–23 (April 2001).

*v. Beutel*, 247 F.2d 604, 606 (5th Cir. 1957) (quoted authority omitted). Congress added the deadline "to change the old rule and require the shipowner to act promptly in asserting the right to limit his liability." *Id.* at 607 (quoted authority omitted); *accord Paradise Divers, Inc. v. Upmal*, 402 F.3d 1087, 1090 (11th Cir. 2005).

## IV.   Analysis

Neither the Supreme Court nor the Eleventh Circuit (nor the former Fifth Circuit) has addressed whether the law at issue here, 46 U.S.C. § 30511(a), or its predecessors, 46 U.S.C. App. § 185, 46 U.S.C. § 185, is a jurisdictional limitation or mandatory claim-processing rule. The Supreme Court has determined that other aspects of the Limitation Act are nonjurisdictional: privity and knowledge of the shipowner, *Langnes v. Green*, 282 U.S. 531, 534 (1931); and the timely posting of a sufficient bond, *Black Diamond S.S. Corp. v. Robert Stewart & Sons*, 336 U.S. 386, 395 (1949).

Applying the principles emphasized by the Supreme Court over the past two decades, including traditional rules of statutory construction, it is clear the law ("**The owner of a vessel may bring a civil action in a district court of the United States for limitation of liability under this chapter. The action must be brought within 6 months after a claimant gives the owner written notice of a claim.**" 46 U.S.C. § 30511(a) (emphasis added)) is a nonjurisdictional mandatory claim-processing rule.

As an initial matter, given the "harsh consequences" of failing to comply with a jurisdictional deadline, *see Kwai Fun Wong*, 135 S. Ct. at 1632 (quoted), including that tardy jurisdictional objections can "result in a waste of adjudicatory resourses and can disturbingly disarm litigants," *see Sebelius*, 568 U.S. at 153 (quoted), the Trans "must clear a high bar to establish that a statute of limitations is jurisdictional," *Kwai Fun Wong*, 135 S. Ct. at 1632 (quoted), and this Court "should not lightly attach those drastic consequences to limits Congress has enacted," *Gonzalez*, 565 U.S. at 141 (quoted). As the Supreme Court has explained, the

17

instances when a statute of limitations can deprive a court of jurisdiction will be "rare." *See Kwai Fun Wong*, 135 S. Ct. at 1632 (quoted).

The text of the law supports that the law is nonjurisdictional. The text of the law sets forth a filing deadline—the owner must bring a limitation action within 6 months after notice. 46 U.S.C. § 30511(a). "Filing deadlines," the Supreme Court has emphasized, are "quintessential claim-processing rules." *See Henderson*, 562 U.S. at 435 (quoted). That is true "even when the time limit is important" and "framed in mandatory terms." *Kwai Fun Wong*, 135 S. Ct. at 1632 (quoted). The text of the law does not "plainly show that Congress imbued" the filing deadline "with jurisdictional consequences," *Kwai Fun Wong*, 135 S. Ct. at 1632 (quoted), speaking only to an action's timeliness and saying nothing about "jurisdiction, or more generally phrased, about a court's powers," *see id.* at 1632 & 1633 n.4 (quoted). The introductory phrase, "The owner of a vessel may bring a civil action in a district court of the United States for limitation of liability under this chapter," 46 U.S.C. § 30511(a), speaks to providing the owner a forum for bringing a limitation action, not to depriving a court of the power to decide the action. Unlike in *Patchak* ("No Claims.—Notwithstanding any other provision of law, an action (including an action pending in a Federal court as of the date of enactment of this Act) relating to the [land] shall not be filed or maintained in a Federal court and shall be promptly dismissed." 128 Stat. 1913 § 2(b)), Congress has not plainly shown an intent to take away a court's ability to decide the action. And unlike the law in *Patchak*, the law here, with requirements for bringing a limitation action and related substantive provisions for limiting liability, does not have an exclusive meaning. *See Patchak*, 138 S. Ct. at 904 (concluding the law there "cannot plausibly be read as anything else," observing the law identifies no element for relief, "[n]or is it a claim-processing rule, like a filing deadline or an exhaustion requirement, that requires the parties to take certain procedural steps at certain specified times.").

Context supports that the law is nonjurisdictional. The law is within the procedural section—not the substantive sections—of Chapter 305 ("Exoneration and

Limitation of Liability"), is among procedures concerning a limitation action (the need for a deposit and trustee and a resulting cessation of other actions), and apart from the law providing district courts original jurisdiction over any civil case of admiralty or maritime jurisdiction, 28 U.S.C. § 1333(1), with nothing linking the laws. *See Kwai Fun Wong*, 135 S. Ct. at 1632. The law is repeated in Supplemental Rule F(1), among other procedural requirements. It would be difficult to reconcile the Eleventh Circuit's holding that the Limitation Act provides no independent foundation for admiralty jurisdiction, *Lewis Charters*, 871 F.2d at 1054, with a holding that missing its deadline takes admiralty jurisdiction away. And it would be difficult to reconcile the Supreme Court's determinations that other aspects of the Limitation Act are nonjurisdictional (privity and knowledge of the shipowner, *Langnes*, 282 U.S. at 534, and the timely posting of a sufficient bond, *Black Diamond*, 336 U.S. at 395) with a holding that another aspect (meeting the 6-month deadline) is jurisdictional.

To the extent legislative history should be considered, it too supports that the law is nonjurisdictional. The legislative history indicates that Congress, in scrutinizing the entire limitation scheme following the *Morro Castle* tragedy, *see Maryland Cas. Co.*, 347 U.S. at 414, imposed the filing deadline merely to change the "old rule" that allowed shipowners to wait to file limitation actions until after fully litigating liability by requiring them to act promptly, *see Paradise Divers*, 402 F.3d at 1090, *Diamond*, 247 F.2d at 606, not to limit a court's power to decide the action. Indeed, in providing, "The vessel owner, within six months after a claimant shall have given to or filed with such owner written notice of claim, may petition a district court of the United States of competent jurisdiction for limitation of liability," 46 U.S.C. § 185 (1936), the original version arguably provided even less reason to find the deadline jurisdictional. Even had Congress thought every filing deadline "however framed or worded" would take away jurisdiction over untimely claims, the Supreme Court in *Kwai Fun Wong* rejected that type of reasoning. *See* 135 S. Ct. at 1636. Moreover, when Congress reorganized and restated laws relating to shipping in 2006 (after the Supreme Court began its campaign to clarify when a law is jurisdictional),

19

it maintained the deadline in the procedural section.[15] *See* PL 109–304, 120 Stat. 1485 § 2(a) (Oct. 6, 2006).

With neither Congress's "own plain statement" that the law is jurisdictional, nor any binding precedent to the contrary, this Court must "treat the time bar as a claim-processing rule." *See Kwai Fun Wong*, 135 S. Ct. at 1638.

Although the Eleventh Circuit has not addressed whether the deadline is a jurisdictional limitation or a mandatory claim-processing rule, it has perhaps implicitly deemed the deadline nonjurisdictional. In two appeals challenging dismissals of limitation actions based on untimeliness, the Eleventh Circuit applied the standard of review for a Rule 12(b)(6) motion, not a Rule 12(b)(1) motion, doing so in one of the cases even though the district court there had treated the motion as a Rule 12(b)(1) motion. *See Paradise Divers,* 402 F.3d at 1089 (reviewing *In re Paradise Divers, Inc.*, No. 03-10021-CIV, 2004 WL 5565028 (S.D. Fla. Mar. 24, 2004) (unpublished), *adopting report and recommendation in* No. 03-10021-CIV, 2003 WL 25731109 (S.D. Fla. Nov. 9, 2003) (recommending failing to file a limitation action within 6 months is jurisdictional) (unpublished)); *P.G. Charter Boats, Inc. v. Soles*, 437 F.3d 1140, 1140 n.1 (11th Cir. 2006) (reviewing *In re Complaint of P.G. Charter Boats, Inc.*, 385 F. Supp. 2d 1243 (S.D. Ala. 2005)).

Many courts outside the Eleventh Circuit have determined the law or its predecessor are jurisdictional. The cases are unpersuasive. They appear to be the "drive-by jurisdictional rulings" the Supreme Court has since criticized, *see Reed Elsevier*, 559 U.S. at 161 (quoted), or rely on equally nonelaborative precedent or

---

[15]As explained in footnote seven of this report and recommendation, there is an exception to the principle that, absent a clear-statement by Congress, the Court will treat a deadline as a mandatory claim-processing rule: if Congress has left undisturbed "a long line" of the Supreme Court's decisions on the jurisdictional character of a time limitation (such as the deadline for filing a notice of appeal in 28 U.S.C. § 2107), the Court has reaffirmed its jurisdictional character. *Union Pac. R. Co.*, 558 U.S. at 82. Concerning the deadline in the Limitation Act, there is no "long line" of Supreme Court decisions on the jurisdictional character of the filing deadline (there is no line), that would compel a reaffirmation of that character. *See id.* (quoted).

precedent developed before the Supreme Court tried to "bring some discipline to the use" of the term "jurisdiction," *see Henderson*, 562 U.S. at 435 (quoted). *See, e.g., The Maine*, 28 F. Supp. 578, 582 (D. Md. 1939) (holding nearly 80 years ago that the deadline is a condition precedent and therefore jurisdictional—a mechanical rationale the Supreme Court has since rejected);[16] *Cincinnati Gas & Elec. Co. v. Abel*, 533 F.2d 1001, 1003 (6th Cir. 1976) (relying on *The Maine*); *Complaint of Tom-Mac, Inc.*, 76 F.3d 678, 682 (5th Cir. 1996) (assuming the law is jurisdictional without elaboration or citation to authority); *In re Waterfront License Corp.*, 231 F.R.D. 693, 699 (S.D. Fla. 2005) (assuming the law is jurisdictional without elaboration or citation to authority); *In re Eckstein Marine Serv. LLC*, 672 F.3d 310, 315 & n.11, n.12 (5th Cir. 2012) (relying on *The Maine, Cincinnati Gas, Complaint of Tom-Mac*, and *In re Waterfront License Corp.* and on a Fifth Circuit case holding the Federal Tort Claims Act's statute of limitations is jurisdictional—*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 646 F.3d 185, 189 (5th Cir. 2011)—which the Supreme Court expressly abrogated in *Kwai Fun Wong*, 136 S. Ct. 1638);[17] *In re the Complaint of RLB Contracting, Inc.*, 773 F.3d 596, 601 & n.5, 602 & n.4 (5th Cir. 2014) (relying without analysis on *In re Eckstein*); *In re Pineland*, 638 F. Supp. 2d 357, 359 (S.D.N.Y. 2009) (relying without analysis on *Tom-Mac, Cincinnati Gas*, and *In re Waterfront License*); *In re Man of Steel, Ltd.*, No. 12-60179-Civ-SCOLA, 2014 WL 12503314 at *3 (S.D. Fla. Feb. 28, 2014) (unpublished) (relying without analysis on *Cincinnati Gas*); *Orion Marine Constr., Inc. v. Carroll*, No. 8:15-cv-1136-MSS-TGW, 2017 WL 5444548,

---

[16]In *Reed Elsevier*, in holding that the Copyright Act's condition precedent to filing an infringement action (preregistration or registration) in 17 U.S.C. § 411(a) is nonjurisdictional, the Supreme Court explained, "A statutory condition that requires a party to take some action before filing a lawsuit is not automatically a *jurisdictional* prerequisite to suit. Rather, the jurisdictional analysis must focus on the legal character of the requirement, which we discerned by looking to the condition's text, context, and relevant historical treatment." 559 U.S. at 166 (emphasis in original; internal quotation marks omitted).

[17]In *In re Eckstein*, the boat owner raised the same challenge on appeal that is presented by the Trans' motion to dismiss here: whether it is proper to treat a motion to dismiss based on an asserted untimely filing of a limitation action as an attack on subject matter jurisdiction under Rule 12(b)(1). 672 F.3d at 315.

at *8 (M.D. Fla. Mar. 31, 2017) (unpublished) (relying without analysis on *In re Waterfront*).

For their argument on why the 6-month deadline is jurisdictional, the Trans contend: "Here, unlike other statute of limitations that restrict or bar a claimant from recovering their damages, the deadline set forth in section 30511(a) is one that allows a claimant to seek their full measure of damages. Indeed, Congress amended the Limitation Act to further cut down the right of a shipowner to limit his liability. … Paying close attention to the context and history of the Act leads to the conclusion that it is jurisdictional and provides no equitable tolling." Doc. 33 at 7.

There are at least three problems with their argument. First, Congress added the 6-month deadline not to "cut down the right of a shipowner" but to drive shipowners to bring limitation actions posthaste instead of waiting until judgment on liability. *See Diamond*, 247 F.2d at 606. Second, even if the purpose were to "cut down the right of a shipowner," that would not be a reason to hold the deadline is jurisdictional; as the Supreme Court has explained, a condition should not be "ranked as jurisdictional merely because it promotes important congressional objectives." *Reed Elsevier*, 559 U.S. at 169 n.9. Third, the argument incorrectly assumes equitable tolling is necessarily available if the deadline is nonjurisdictional. As the Supreme Court has observed, it has "reserved whether mandatory claim-processing rules may be subject to equitable exceptions." *See Hamer*, 138 S. Ct. at 18 n.3.

Neither party suggests, and the record would not support, that § 1333(1) is an inappropriate foundation for this action. *Cf. Mink, Inc.*, 29 F.3d at 1546 ("[P]roducts liability actions involving pleasure craft in navigation fall within the admiralty jurisdiction."). Because the 6-month deadline is nonjurisdictional, granting the Trans' Rule 12(b)(1) motion to dismiss for lack of jurisdiction based on the boat owners' asserted untimely filing of the action, and in doing so necessarily considering the many letters, the affidavit, and other documents they present, is unwarranted. An appropriate avenue for presenting any untimeliness or equitable tolling argument based on evidence outside the pleadings would be in a motion for summary judgment

following a period of discovery.

If the Court disagrees that the 6-month deadline is nonjurisdictional, denying the Trans' Rule 12(b)(1) motion is still warranted, but without prejudice to renewing it following the limited jurisdictional discovery the boat owners have requested.

## V.     Recommendations[18]

I recommend denying the Trans' Rule 12(b)(1) motion to dismiss, Doc. 11, without prejudice to reasserting any untimeliness or equitable tolling arguments following a period of discovery, and directing the parties to file an amended case management report within 21 days of any order denying the motion to dismiss.

**Ordered** in Jacksonville, Florida, on August 20, 2018.

_____

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:     The Honorable Timothy J. Corrigan
       Counsel of record

---

[18]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02. Of course, as stated, any question of subject matter jurisdiction is not subject to waiver. *Hamer*, 138 S. Ct. at 17. Here, the deadline for filing any objections is **September 4, 2018**. The deadline for filing any response to any objections is **September 18, 2018**.